UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CINDI POLITO,

                          Plaintiff,

      -v.-

TRI-WIRE ENGINEERING SOLUTION, INC.,
RAYMOND PARIS, MARK SPIERS, GREG
CONNOLLY and JOHN MARSH,

                      Defendants.
_____

**MEMORANDUM AND ORDER**
07-CV-189 (DRH) (ETB)

**APPEARANCES:**

**For the Plaintiff:**
**Frank & Associates, P.C.**
500 Bi-County Blvd., Suite 112N
Farmingdale, New York 11735
By: Robert C. Jacovetti, Esq.

**For the Defendants:**
**Morrison Mahoney LLP**
17 State Street, Suite 1110
New York, New York 10004
By: Demi Sophocleous, Esq.

**HURLEY, Senior District Judge:**

                Plaintiff Cindi Polito ("Plaintiff") filed the present action against Tri-Wire

Engineering Solution, Inc. ("Tri-Wire"), Raymond Paris ("Paris"), Mark Spiers ("Spiers"), Greg

Connolly ("Connolly"), and John Marsh ("Marsh") (collectively, "Defendants") alleging that she

was discriminated against based on her gender pursuant to the New York State Human Rights

Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"), the New York City Human Rights Law,

N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and the Suffolk County Human Rights Law,

Laws of Suffolk County, New York, Part III § 89-13 ("SCHRL"); that she was subjected to a

hostile work environment based on sex pursuant to the NYSHRL and the NYCHRL; that

Defendants failed to notify her of her eligibility to continue health insurance coverage in

violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 et seq.

("COBRA"); and that Tri-Wire was negligent in retaining and supervising defendants Spiers and

Connolly as employees.  Defendants have moved for summary judgment pursuant to Federal

Rule of Civil Procedure ("Rule") 56.  For reasons stated below, their motion is granted in part

and denied in part.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1

Statements, are undisputed unless otherwise noted.

Plaintiff was employed by Tri-Wire as a dispatcher in its Suffolk County office

located in Ronkonkoma, New York from March 3, 2003 to October 7, 2005.  According to

Plaintiff, she worked under a number of different supervisors at different times, including

defendants Spiers and Connolly, until August 2004 when Paris was hired as Operations Manager

of the Suffolk County office and became Plaintiff's direct supervisor.  (Pl.'s Dep at 71-72, 93-94,

169-71.)  Paris remained in that position through Plaintiff's termination date.

Plaintiff was promoted to the position of dispatch manager sometime in 2004.

After her promotion, Plaintiff claims that she was informed by Marie Wade ("Wade"), Tri-

Wire's Human Resources Manager, Marsh, and Paris on eight separate occasions that she would

be trained to work on a new electronic billing system.  (Polito Aff., dated Dec. 30, 2008 ("Pl.'s

Aff.") ¶ 9; Pl.'s Dep. at 112.)  As dispatch manager, Plaintiff was responsible for supervising

two to three dispatchers in the Ronkonkoma office, including Jennifer Martin ("Martin").  (*See*

Pl.'s Aff. ¶ 8; Marsh Dep. at 11.)

Plaintiff became pregnant in April 2005 and notified Tri-Wire of her pregnancy. She was informed that her job would remain available for her upon her return from maternity leave. Plaintiff contends that after she notified Tri-Wire of her pregnancy, the responsibility to learn and work with the new electronic billing system was assigned to Martin, who began training on the new system.[1] (Pl.'s Aff. ¶ 11; Pl.'s Dep. at 115.)

### Plaintiff's Altercation with Martin and Plaintiff's Termination

Plaintiff claims that on Friday, October 7, 2005, she and Martin had a verbal argument during which Martin said to Plaintiff, "if you weren't pregnant, I'd kick your . . . ass." (Polito Aff. ¶ 26.)[2] Because Plaintiff allegedly felt physically threatened, she reported the incident to Paris, her immediate supervisor, and to Marsh, her manager. (Polito Dep. at 149, 198; Marsh Dep. at 32.) Plaintiff also filed a police report about the incident with the Suffolk County Police Department. (Pl.'s Ex. G.) Upon Paris's return to the office in the afternoon, he met with Plaintiff and Martin in his office. The parties disagree about what happened next.

According to Defendants, Plaintiff called Marsh after the altercation and Marsh told her he would call Paris and have him report to the office immediately to see what was

---

[1] In her affidavit, Plaintiff states that after she announced her pregnancy, several of her responsibilities were reassigned to Martin, who was not pregnant. (*See* Pl.'s Aff. ¶ 12.) However, at her deposition, Plaintiff consistently testified that her duties did not change in any way after she advised Tri-Wire of her pregnancy. (*See, e.g.*, Pl.'s Dep. at 89-90, 462.) It is well-established that "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. Jetblue Airways Corp.*, – F.3d –, 2010 WL 569367, at *9 (2d Cir. 2010).

[2] In her deposition, Plaintiff testified that Martin told her " [y]ou're f'ing lucky you're pregnant, or I'd kick your ass.' " (Polito Dep. at 339.)

happening.  (Marsh Dep. at 32-33.)  Paris later met with both women who were "out of control."

He told them to go home and "report back to work" on their next regularly scheduled day.  (Paris

Dep. at 28, 34.)  Martin's next scheduled workday was the following day, Saturday, at which

time Martin reported to work and spoke to Paris.  (*Id.* at 13, 29.)  Plaintiff's next scheduled

workday was the following Monday.  Unlike Martin, Plaintiff did not report to work.  Paris

claims that the first time he heard from Plaintiff was Tuesday morning when he retrieved a

telephone message left by Plaintiff the previous evening saying that she could not report to work

on Tuesday because she had a doctor's appointment.  (*Id.* at 33-34, 45.)

        According to Plaintiff, she and Martin were sent home on Friday without any

further instructions.  Specifically, Plaintiff claims that Paris chastised both women for their

behavior and stated: "Both of you leave."  (Pl.'s Dep. at 184.)  Later that day, Plaintiff called

Marsh, general manager of Tri-Wire's main office in Massachusetts, to discuss what happened.

(*Id.* at 188.)  At her deposition, Plaintiff explained that she was friends with Marsh, who spent a

lot of time in the Suffolk County office, and if she had any problems she "figured that he would

take care of them."  (*Id.* at 87-88.)

        According to Plaintiff, Marsh told her that "somebody needs to get fired" and that

he would call her back.  (*Id.* at 188.)  Marsh also told her he would speak with Paris and assured

Plaintiff that she "was safe coming back to work."[3]  (*Id.* at 197.)  Although Plaintiff left Marsh

several messages at work and on his cell phone over the weekend, Marsh did not return

Plaintiff's calls.  (*Id.* at 188, 360.)  Plaintiff also left Paris two telephone messages over the

_____

     [3] Plaintiff explained that Marsh meant that her personal safety would be ensured while at
the workplace.  (Polito Dep. at 98.)

4

weekend but Paris did not call her back as well.  (*Id.* at 193; Polito Aff. ¶ 31.)  Plaintiff submits

copies of phone records reflecting the telephone calls she placed to both Paris and Marsh.

(*See* Pl.'s Ex. H.)

Plaintiff claims that she called Paris on Monday morning at 9:00 a.m and he told

her he would call her back after he spoke to Marsh.  (Pl.'s Dep. at 195.)  In general, Plaintiff was

required to report to work at 9:30 a.m.  (*Id.* at 345.)  After not hearing from Paris, Plaintiff called

Paris back at 10:00 a.m. and Paris told her "don't bother coming in."  (*Id.* at 194-95; Polito Aff. ¶

32.)  Plaintiff tried to explain to Paris that she did not report to work because she waiting to

receive instructions from Marsh.  (Pl.'s Dep. at 197.)

Thereafter, Paris sent Plaintiff an undated letter which provides as follows:

> You were requested to report to work on Monday October
> 10, 2005.  Since you have chosen not to respond to this request you
> have left TriWire Engineering Solutions Inc.  No chose [sic] but to
> terminate your employment with us.  Your Employment has been
> terminated as of October[] 10, 2005.

(Pl.'s Ex I.)  Also in the record is a "Departing Employee Form" which provides the following

description of the events leading up to Plaintiff's termination:

> [Plaintiff] had an argument with another employee on
> Friday October 7, 2005. [Plaintiff] and that employee were sent
> home. [Plaintiff] did not show up for work on Monday October 10,
> 2005. [Plaintiff] then called and was told she must come to work
> today or she will be terminated.  She never came into work.
> [Plaintiff] did not show up for work Tuesday October 11, 2005,
> she left a message on the night machine saying she had a doctor's
> appointment.  She never called back after that. [Plaintiff] was sent
> a termination letter.

(*Id.*)

Defendants maintain that Plaintiff's termination was due to her "job

abandonment" following her altercation with Martin. (Aff. of Raymond W. Paris, dated Nov. 13, 2008, at 18.) Because, as opposed to Plaintiff, Martin reported to work on her next scheduled workday, Martin was not terminated. Rather, Martin was issued an "Employee Warning" on Monday, October 10, 2005 which provides as follows: "[Martin] had an argument with [Plaintiff]. The argument became heated. [Martin] was sent home with a warning. She was told to report back to work tomorrow." (*See* Pl.'s Ex. K.) The Employee Warning lists "1st Offense, 2nd Offense, 3rd Offense [and] 4th Offense." (*Id.*) "1st Offense" is circled. (*Id.*)

### *Tri-Wire's Progressive Disciplinary Process*

Tri-Wire maintained a "Progressive Discipline" policy. (Pl.'s Ex. J.) The policy provides that Tri-Wire has "the right to terminate employment at will, with or without cause or advance notice" and that use of its progressive discipline was discretionary. (*Id.*) The policy further provides that disciplinary action "may be any of the following four steps: 1) verbal warning, 2) written warning, 3) suspension with or without pay, or 4) termination of employment." (*Id.*) The policy indicates that one or more steps can be by-passed, but that the steps will normally follow in the given progression. (*Id.*) However, "[i]n very serious situations, some types of employee problems may justify either a suspension, or, in extreme situations, termination of employment, without going through the usual progressive discipline steps." (*Id.*)

### *Plaintiff's Claims of Hostile Work Environment*

Plaintiff claims that throughout the course of her employment, she was sexually harassed by defendants Connolly and Spiers. For example, she testified that Connolly told her that she "look[ed] sexy with [her] glasses on," that she "[had] a nice ass," that she had "a better body than the girls in the office," and that she "was a beautiful pregnant woman," and that these

comments made her feel very uncomfortable.  (Polito Dep. at 263-66.)  Plaintiff also testified

that Spiers was "very touchy-feely" and would "grab" her and the other females in the office.

(*Id.* at 281.)

Tri-Wire's Employee Handbook provides that if an employee is experiencing or

witnessing sexual harassment at work, they are to "report it immediately to [his or her]

supervisor.  If [the] supervisor is unavailable or [the employee] believe[s] it would be

inappropriate to discuss it with [his or her] supervisor, [the employee] should contact the

President or any other member of management."  (Defs.' Ex. I at 345-46.)  Although Plaintiff

never once filed a written complaint regarding any sexual harassment,[4] Plaintiff claims that she

orally complained to her superiors about the behavior immediately after each occurrence.

Plaintiff claims that no remedial action was taken after she complained.  (Pl.'s Dep. at  479-80.)

**Plaintiff's COBRA Claim**

Plaintiff claims that upon her termination from employment, Defendants failed to

notify her, as required by COBRA, that she was eligible to continue her health insurance

coverage through Defendants.  Defendants disagree and contend that Tri-Wire's Human

Resources department mailed Plaintiff a letter notifying her of her COBRA rights.

**The Complaint and the Present Motion**

The Complaint as originally filed asserted ten causes of action against

Defendants.  By stipulation dated March 11, 2008, Plaintiff voluntarily withdrew her Second,

Third, and Fifth Causes of Action with prejudice.  This stipulation was So Ordered by the Court

---

[4]  It is undisputed that the only written complaint Plaintiff ever made while employed by
Tri-Wire concerned Martin, for either lateness or cursing in the office.

on March 31, 2008.  The remaining claims are as follows: (1) the First Cause of Action alleging

a violation of COBRA; (2) the Fourth Cause of Action alleging hostile work environment based

on sexual harassment in violation of the NYSHRL and the NYCHRL; (3) the Sixth Cause of

Action alleging gender discrimination based on pregnancy in violation of the NYSHRL; (4) the

Seventh Cause of Action alleging gender discrimination based on pregnancy in violation of the

NYCHRL; (5) the Eighth Cause of Action alleging aiding and abetting gender discrimination in

violation of the NYSHRL; (6) the Ninth Cause of Action alleging gender discrimination based

on pregnancy in violation of the SCHRL; and (7) the Tenth Cause of Action alleging negligent

supervision and retention.  No federal discrimination claims are filed.  Defendants move for

summary judgment on all claims.  For the reasons stated below, Defendants' motion is granted in

part and denied in part.

**DISCUSSION**

**I.       *Motion for Summary Judgment - Legal Standards***

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only

appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other

documentation demonstrates the absence of a genuine issue of material fact, and one party's

entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d

712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are

material; "only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party

demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all

inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the

underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157 (2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994).

## II.     *Plaintiffs' Claim that Defendants Violated COBRA is Dismissed*

COBRA provides employees who have employment related group health insurance coverage the opportunity to elect continuation of coverage under the plan in the event of a qualifying event, which includes the termination of employment. 29 U.S.C. § 1161; *Hubicki v. Amtrak Nat'l Passenger R.R. Co*., 808 F. Supp. 192, 196 (E.D.N.Y. 1992). COBRA simply requires that employers notify outgoing employees of their right to elect COBRA coverage; it does not obligate employers to pay premiums for any coverage that an employee elects. Terminated and otherwise departing employees must pay their own premiums. *See Local 217, Hotel & Restaurant Employees Union v. MHM, Inc.,* 976 F.2d 805, 809 (2d Cir. 1992); *LaFauci v. St. John's Riverside Hosp.,* 381 F. Supp. 2d 329, 332 (S.D.N.Y. 2005).

COBRA requires that an employer must notify the plan administrator of the termination within 30 days thereof and the plan administrator then has 14 days to provide the

COBRA notice to the terminated employee. The terminated employee then has 60 days from the date of termination of employment or the date of notice, whichever is later, to elect to continue coverage. 29 U.S.C. § 1166. COBRA contains no specific requirements as to the manner in which notice must be given. *Id.* § 1166(a)(4). A "good faith" effort to notify the employee is sufficient. *Tufano v. Riegel Transp., Inc.*, 2006 WL 335693, at *4 (E.D.N.Y. Feb. 11, 2006). "In general, '[a]n employer or plan administrator who sends proper notice to the covered employee's last know address is deemed to be in good faith compliance with COBRA's notification requirements.'" *Id.* (quoting *Hubicki*, 808 F. Supp. at 196).

To satisfy its burden of proving that it satisfied the statute's requirements, Tri-Wire offers evidence of the measures it took to notify Plaintiff of her right to extend her health benefits. First, Tri-Wire presents the deposition testimony of Paris who testified that COBRA issues are handled by the company's human resources department. On October 10, 2005, Paris notified Wade, Tri-Wire's Human Resources Manager, that Plaintiff had been terminated. (Paris Dep. at 44.)

Second, Tri-Wire submits Wade's affidavit. In her affidavit, Wade states as follows:

> Following plaintiff's abandonment of her job on October 10, 2005, and her ultimate termination, as required by law and as part of my job duties and responsibilities as the Human Resources Manager/Director, I notified plaintiff of her right to COBRA benefits by mailing to her a notification letter via first class mail dated October 7, 2005. At the time of the mailing of the COBRA notification letter, we did not have any issues with our mail, nor was the letter returned to our office as undeliverable.

(Wade Aff. ¶ 14.)[5]

Lastly, Tri-Wire proffers a copy of the letter allegedly mailed by Wade. (*See* Defs.' Ex. M.) The letter appears to be a form letter notifying employees of the right to continue health coverage under COBRA with Plaintiff's personal information handwritten in, including her name, address, the date her eligibility for coverage under Tri-Wire's health plan terminated, viz. October 7, 2005, the date she had to decide whether to elect to continue coverage under COBRA, viz. December 7, 2005, the name of her current health plan, and the monthly group rates for this plan. (*Id.*) The letter is dated October 7, 2005. (*Id.*)

The Court finds Tri-Wire's evidence of mailing sufficient to satisfy its burden under the statute. Tri-Wire has submitted an affidavit by an employee who avers that she mailed the letter, a copy of which is provided. The copy contains Wade's handwritten notes which are specific to Plaintiff. There is no claim by Plaintiff that the address was incorrect or the notice was not mailed in accordance with Tri-Wire's standard procedure. Although Plaintiff makes much of the fact that the letter is unsigned, a review of the letter reveals that due to the way it is formatted, there is no place for Wade's signature. Moreover, the fact that Paris told Wade of Plaintiff's termination on Monday, October 10, 2005 yet Wade's letter is dated October 7, 2005 is of no moment as the date of the COBRA notice is the last date Plaintiff attended work at Tri-Wire.

In response to Tri-Wire's arguments, Plaintiff claims that she never received the COBRA letter sent by Wade. In support of this contention, she avers that she independently

---

[5] "There is a presumption that a letter properly addressed and mailed is received." *Tufano*, 2006 WL 335693, at *4 (citations and internal quotation marks omitted).

obtained health coverage for her and her children after she was terminated from her employment. Plaintiff's claim is immaterial, however, as "COBRA does not require actual receipt of notification by the plan participant; to the contrary, only a good faith attempt to notify is required." *Ramos v. SEIU Local 74 Welfare Fund*, 2002 WL 519731, at *5 (S.D.N.Y. Apr. 5, 2002). *See also Crotty v. Dakotacare Admin. Servs.*, 455 F.3d 828, 830 (8th Cir. 2006) ("[T]he statute does not require proof of actual notice, so long as the administrator has sent the notice by means reasonably calculated to reach the recipient."); *Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir. 2002) (finding that employer met its duty under COBRA to notify terminated employee of his right to continue health insurance coverage by sending a letter via certified mail to employee's last known address, notwithstanding fact that letter was returned as "undelivered"); *Liles v. N.Y. City Dep't of Educ.*, 516 F. Supp. 2d 297, 317 (S.D.N.Y. 2007) ("It is not Defendants' obligation to track down Plaintiff in order to assure that he receives the COBRA forms that were sent to him. Plaintiff cannot state a claim under COBRA by merely claiming that he did not receive a letter that complied with the relevant notice provisions."). Accordingly, Defendants' motion for summary judgment on Plaintiff's COBRA claim is granted.

III.     ***Plaintiff has Raised a Genuine Issue of Material Fact with Regard to her Pregnancy-Based Discrimination Claims***

Plaintiff alleges that she was discriminated against on the basis of her pregnancy in violation of the NYSHRL, the NYCHRL, and the SCHRL. Although Defendants move for summary judgment with regard to all of Plaintiff's pregnancy-based discrimination claims, neither side addresses the applicable standards under the NYCHRL or the SCHRL. Instead, the parties discuss Plaintiffs' claims under the NYSHRL only. Accordingly, the Court will address

Plaintiff's pregnancy-based discrimination claims under the NYSHRL only.[6]  For the reasons

stated below, the Court finds that Plaintiff has raised a genuine issue of material fact with regard

to her NYSHRL pregnancy-based discrimination claims; Defendants' motion for summary

judgment is therefore denied.

**A.**     ***The McDonnell-Douglas Burden-Shifting***
          ***Methodology Applies to Plaintiff's NYSHRL Claims***

The NYSHRL prohibits discharge of an employee based on pregnancy.  *See Mittl*

*v. N.Y. State Dep't of Human Rights*, 100 N.Y.2d 326, 330 (2003) (citing N.Y. Exec. Law §

296(1)).   The standards for establishing unlawful discrimination under the NYSHRL are the

same as those governing Title VII cases.  *See id.  See also Schiano v. Quality Payroll Sys., Inc.*,

445 F.3d 597, 609 (2d Cir. 2006); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir.

2000); *Leopold v. Baccarat*, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999).

In *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the

Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing

Title VII employment discrimination claims based on indirect or circumstantial evidence.  This

standard was further refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-253

----

[6]  *See, e.g.*, *Kolenovic v. ABM Indus. Inc.*, 2010 WL 227660, at *1 (2d Cir. Jan. 21, 2010)
(unpublished) ("The Local Civil Rights Restoration Act of 2005 ("Restoration Act"), N.Y.C.
Local Law No. 85 (2005), requires that claims brought under the NYCHRL be evaluated
separately from counterpart claims brought under Title VII of the Civil Rights Act of 1964
('Title VII'), as amended, 42 U.S.C. § 2000 et seq., and the New York State Human Rights Law
('NYSHRL'), N.Y. Exec. Law § 290 et seq.").  *See also Vuong v. N.Y. Life Ins. Co.*, 2010 WL
93157, at *2 (2d Cir. Jan. 12, 2010) (unpublished) (stating that the NYCHRL applies only to
discriminatory conduct that occurs within the limits of New York City).  Although it does not
appear that the alleged discriminatory decisions related to Plaintiff's employment occurred in
New York City, because the parties have not addressed the issue, the Court declines to consider
it.

(1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 F. App'x 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Montana v. First Fed. Sav. &*

*Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

   If the employer carries its burden, the employee may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero v. Warner-Lambert Co.*, 142 F. Supp. 2d 196, 203 n.7 (D. Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd*, 9 F. App'x 38 (2d Cir. 2001). However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

   "[I]n some circumstances, a prima facie case plus falsity of the employer's explanation can, without more, be enough to support a reasonable finding that prohibited

discrimination has occurred, and thus that a plaintiff may, under those circumstances, reach the jury on this evidence and without additional evidence, but . . . in other circumstances, a prima facie case, combined with falsity of the employer's explanation, will not be sufficient." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 155-56 (2d Cir. 2000) (citing *Reeves*, 530 U.S. at 147).   The Court should take a case-by-case approach, examining the following factors: "[T]he strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49.

**B.**   ***Plaintiff has Proffered Sufficient Evidence to Establish a Prima Facie Case of Discrimination***

To establish a prima facie case of discrimination, Plaintiff must show that: (1) she belonged to a protected class, (2) was qualified for the position she held, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).  Defendants concede that Plaintiff has established the first three elements of her prima facie case, viz. that she was a female employee who notified Tri-Wire of her pregnancy in April 2005, that she was qualified for the position,[7] and that she was terminated.  Defendants contend, however, that Plaintiff cannot prove that she was terminated under circumstances giving rise to discrimination.  The Court disagrees.

There is evidence that Defendants treated Martin, a similarly situated employee, more favorably than Plaintiff.  Employees used as comparators for purposes of a similarly

---

[7]  Marsh testified that Plaintiff "was excellent in what she did" (Marsh Dep. at 21), and Plaintiff's performance evaluations reflect that Plaintiff either met or exceeded expectations in virtually all categories of review.  (*See* Pl.'s Ex. E.)

situated analysis need not be identically situated, but only must be similarly situated in "all material respects."  *See, e.g., McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001). "What constitutes 'all material respects' . . . varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness."  *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999)). "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury."  *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Plaintiff was the dispatch manager and Martin was one of the dispatchers Plaintiff supervised.[8]  Although both employees were subject to the suggested procedures laid out in Tri-Wire's Progressive Discipline policy,[9] after their altercation, Plaintiff was fired while Martin, who was not pregnant, received only a written warning.  There is no suggestion in the record that Plaintiff's behavior during the altercation was in any way more eggregious than Martin's.

Defendants suggest that Plaintiff and Martin were not similarly situated because Martin reported to work on her next scheduled workday (Saturday) while Plaintiff did not (on Monday).  However, Plaintiff proffers evidence that she was sent home following the altercation without any further instructions and was told by Marsh later that day that he would call her back

<hr />

[8]  "Although an employee's position is relevant to the analysis, employees need not be of the exact same rank to be considered 'similarly situated.' "  *Gorzynski v. Jetblue Airways Corp.*, – F.3d –, 2010 WL 569367, at *16 n.7 (2d Cir. 2010).

[9]  As noted above, this policy provided that discipline would normally occur in the following progression:  1) verbal warning, 2) written warning, 3) suspension with or without pay, or 4) termination of employment.

and advise her how to proceed.  Plaintiff also offers evidence that although she attempted to reach both Marsh and Paris over the weekend via the telephone, they did not return any of her phone calls.  Finally, Plaintiff avers that she spoke to Paris on the telephone first thing Monday morning and explained that she did not report to work because she was waiting to hear from Marsh but Paris told her not to bother coming in.

Construing the evidence favorably to Plaintiff, the Court cannot state as a matter of law that Plaintiff and Martin were not similarly situated.  A jury could find that despite Plaintiff's failure to report to work on Monday, Plaintiff and Martin committed transgressions of comparable seriousness given Plaintiff's explanation for her absence.  Accordingly, the Court finds that Plaintiff has proffered sufficient evidence to make out a prima facie claim of discriminatory intent.

Further bolstering Plaintiff's prima facie case is the evidence indicating that shortly after Plaintiff notified Tri-Wire of her pregnancy, Martin received training for the new electric billing system although Plaintiff, as Martin's supervisor, was told that she would be the one to be trained.  Then six months later, Plaintiff was terminated and Martin was given Plaintiff's responsibilities.  Considering the temporal proximity of that chain of events in relation to Plaintiff's disclosure that she was pregnant, it would not be unreasonable to infer discrimination.  *See Chow v. Stride Rite Corp.*, 2009 WL 196030, at *5 (S.D.N.Y. Jan. 27, 2009) ("Courts have held that temporal proximity between an employee's request for maternity leave and her termination is sufficient to establish an inference of discrimination at the prima facie

stage.") (citations and internal quotation marks omitted).[10]

### C. **_Defendants' Have Articulated a Legitimate, Non-Discriminatory Reason for the Adverse Actions_**

Once the employee has established a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse action. As noted previously, an employer's burden of showing a legitimate non-discriminatory reason for its actions is not particularly onerous.

Here, Defendants maintain that Plaintiff was terminated as "the direct result of her altercation with her co-worker Jennifer Martin and her failure to return to work on her next scheduled work day." (Defs.' Mem. of Law in Supp. at 11.) This is a legitimate, non-discriminatory reason. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008) ("It is not our task, at the second stage of the *McDonnell Douglas* framework, to assess the credibility of [the defendant's] witnesses; nor is it our role to determine whether the [defendant's] explanation of its action is convincing. . . . Instead, we ask whether defendant has introduced evidence that, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason.' "

---

[10] In the Second Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by "showing that the protected activity was closely followed in time by the adverse [employment] action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (citation and quotation marks omitted) (stating that twelve days between alleged sexual harassment and discharge could suggest a causal relationship). Though there is no bright-line rule, an adverse employment action following within a couple months of the protected activity typically suffices to establish causal connection. *See Gormon-Bakos v. Cornell Co-op Extension of Schenectady*, 252 F.3d 545, 555 (2d Cir. 2001) (passage of up to five months short enough for causal connection where plaintiffs provided evidence of retaliatory actions throughout that time period); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight month period between filing of EEOC complaint and retaliating action sufficient to suggest causal relationship).

(quoting *St. Mary's*, 509 U.S. at 509).

**D.** ***Plaintiff has Proffered Sufficient Evidence to Show***
***that Defendants' Stated Reason was Pretextual and***
***that Discrimination was an Actual Reason for her Termination***

Once an employer has articulated a legitimate, non-discriminatory reason for its

actions, the plaintiff then has the burden of showing that the stated reason was pretextual, and

that the employer was motivated at least in part by unlawful retaliation. Construing the evidence

in the light most favorable to Plaintiff, the Court finds that there is a sufficient basis for a trier of

fact to doubt Defendants' proffered evidence and ultimately find that the reasons offered by

Defendants were pretextual. Given that there is nothing in the record to suggest that Plaintiff

was more to blame for the altercation than Martin, and given the disputed circumstances

surrounding Plaintiff's decision not to report to work the following Monday, the disparate

disciplinary action taken by Defendants against Plaintiff could reasonably be viewed as a pretext

for unlawful discrimination. *See Kerser v. Kingly Mfg.*, 156 F.3d 396, 402 (2d Cir. 1998) (noting

that a plaintiff may rely on same evidence used to establish prima facie case to demonstrate

pretext). This is especially true given that Martin was seemingly disciplined pursuant to Tri-

Wire's Progressive Disciplinary Process while Plaintiff was not.[11] Moreover, in light of

Plaintiff's claim that Defendants trained Martin to work on the new electronic billing system

after Plaintiff informed Defendants of her pregnancy, despite the fact that Plaintiff was advised

on multiple occasions that electronic billing would be assigned to her as Martin's supervisor,

---

[11] The record reflects that both Plaintiff and Martin received only one written warning each prior to their altercation. Plaintiff received a written warning on August 12, 2003 for failing to comply with Tri-Wire's attendance policy based upon Plaintiff's failure to report to work on time. (Pl.'s Ex. F.) Martin received a written warning for lateness or cursing in the office. (Polito Dep. at 73-74.)

Tri-Wire's decision to terminate Plaintiff and not Martin seems particularly suspect. Although Defendants claim that Plaintiff did not have the qualifications to handle the electronic billing system while Martin did, drawing all inferences in favor of Plaintiff, a jury could find that in training Martin and then terminating Plaintiff, Defendants discriminated against Plaintiff on the basis of her pregnancy.

In sum, the Court finds that a reasonable jury could conclude that Defendants' proffered reason for terminating Plaintiff was a pretext for pregnancy discrimination. Accordingly, Defendants' motion for summary judgment with regard to this claim is denied.

## IV.    *Plaintiff has Raised a Genuine Issue of Material Fact with Regard to her Hostile Work Environment Claims*

Count IV asserts a claim of hostile work environment based on sexual harassment in violation of the NYSHRL and the NYCHRL. The Court will address Plaintiff's claims seriatim.

### A.    *Plaintiff's Claims Under the NYSHRL*

#### 1.    *Applicable Standards*

Hostile work environment claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII. *Schiano*, 445 F.3d at 609. To establish a hostile work environment claim under Title VII, a plaintiff must prove "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). The plaintiff must "show that the complained of conduct: (1) 'is objectively severe or pervasive - that is, creates an

environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.' " *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano* 294 F.3d at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In analyzing a plaintiff's case, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* (citing *Harris*, 510 U.S. at 23). Relevant factors include " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* (quoting *Harris*, 510 U.S. at 23). Generally, unless an incident of harassment is sufficiently severe, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano*, 294 F.3d at 374 (internal quotation marks omitted). However, "it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.*

As the Second Circuit has noted on more than one occasion:

> While the standard for establishing a hostile work
> environment is high, we have repeatedly cautioned against
> setting the bar too high, noting that "[w]hile a mild,
> isolated incident does not make a work environment
> hostile, the test is whether 'the harassment is of such
> quality or quantity that a reasonable employee would find

the conditions of her employment altered for the worse.' " (alteration and emphasis in the original).

*Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)).

"The environment need not be 'unendurable' or 'intolerable.' " *Id.*  In brief, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Id.* (quoting *Whidbee*, 223 F.3d at 70 (internal quotation marks omitted)).

*Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).

## 2.  *Plaintiff's Allegations of Gender-Based Harassment*

Plaintiff was employed by Tri-Wire in its Suffolk County office located in Ronkonkoma, New York from March 3, 2003 to October 7, 2005.  Plaintiff claims that throughout the course of her employment, she was sexually harassed by defendants Connolly and Spiers and made to feel uncomfortable, embarrassed and humiliated.  (Pl.'s Aff. ¶ 20.)  For example, Plaintiff claims that in 2004, employees in the Ronkonkoma office, including Connolly and Spiers, were required to view a sexual harassment training video.  During the viewing, Connolly and Spiers made "jokes and offensive comments about the video."  (*Id.* ¶ 15.)  Plaintiff later complained to Wade.  (Pl.'s Dep. at 66.)  Plaintiff's specific accusations against Connolly and Spiers are set forth separately below.

### a.  *Spiers*

Plaintiff claims that "[o]n at least four occasions, Mark Spiers made comments to [her] such as '[O]h I'll get you one day as a girlfriend,' " (Pl.'s Aff. ¶ 18) and that "he had sex with a woman he was dating with another employee in the room."  (*Id.* ¶ 19.)  "[A] couple of

times" he would talk to her about girls he had met online and was having sex with.  (Pl.'s Dep. at 323, 327.)  Plaintiff avers that she complained on each occasion to Spiers, Marsh, and Wade. (Pl.'s Aff. ¶ 18.)

Plaintiff also claims that Spiers was "very touchy-feely" and would "grab" her and the other females in the office.  (Pl.'s Dep. at 281.)  He would put his arm around her and tap or squeeze her shoulder and Plaintiff would tell him to "[g]et the heck off of [her]."  (*Id.* at 400; *see also id.* at 79.)  In this regard, Plaintiff claims that Spiers also harassed another former female employee of Tri-Wire, Jackie Boyjian ("Boyjian"), by telling her that she had "big boobs" and "padding in [her] bra" and asking her if she wanted to "hang out tonight."  (Pl.'s Dep. at 60.)  Spiers also "grabbed [Boyjian's] ass [and] talked sexy."[12]  (*Id.*)

Although Plaintiff claims that she was subjected to harassing comments and conduct by Spiers in both Brooklyn and Ronkonkoma (*id.* at 399), the parties disagree over the extent of contact Plaintiff had with Spiers on a regular basis.  Defendants contend that Plaintiffs contact with Spiers was extremely limited because when Paris was Plaintiff's supervisor, viz. August 2004 to October 2005, Spiers did not work out of the Ronkonkoma office but rather worked in Brooklyn.  (Paris Aff. ¶ 6.)  During this period, the only time Spiers spent in Ronkonkoma was a visit to the office approximately twice a week for the duration of half an hour on each given visit.  The purpose of Spiers's visit was to meet with Paris and submit the

---

[12]  Plaintiff contends that she was asked to testify as a witness for Tri-Wire in a discrimination case based on hostile work environment brought by Boyjian against Tri-Wire, Connolly, and Spiers.  (Pl.'s Aff. ¶ 13.)  Presumably, Plaintiff is referring to deposition testimony as in her deposition, Plaintiff explained that the testimony was to take place at an attorney's office.  (Pl.'s Dep. at 59 437.)  Tri-Wire maintains that Boyjian "never commenced a formal action against" Tri-Wire.  (Defs.' Reply at 2.)

required paperwork. (*Id.*) Defendants do not account, however, for the remainder of time Plaintiff worked at Tr-Wire, i.e. March 2003 to August 2004.

According to Plaintiff, when Plaintiff was first hired in March 2003, Spiers worked as a general manger in Ronkonkoma and was later transferred to Brooklyn sometime in 2004. (Pl.'s Dep. at 319, 396.) This is consistent with Plaintiff's first Employee Review which covers the period March 2003 to March 2004 and is filled out by Spiers, who is listed as Plaintiff's Manager/Supervisor. (Pl.'s Ex. E.) Plaintiff claims that the majority of Spiers's allegedly illegal conduct occurred when Spiers was in the Ronkonkoma office (*id.* at 399), though his offensive behavior continued even after Spiers transferred to Brooklyn. (*Id.* at 399, 403.) Plaintiff claims that she was "back and forth to Brooklyn to train the girls" (*id.*) and that even when Spiers was stationed in Brooklyn, "he was always in Ronkonkoma"(*id.* at 403), about six hours everyday. (*Id.* at 404.) Thus, according to Plaintiff, she saw Spiers frequently over the entire course of her employment.

### b. *Connolly*

Plaintiff claims that "[o]n at least four occasions," Connolly made comments that Plaintiff "look[ed] sexy in glasses on," that she "had a nice ass," that she was "a beautiful pregnant woman" (*id.* ¶ 17), and that she had "a better body than the girls in the office." (Pl.'s Dep. at 264.) Because Plaintiff had heard from Spiers and Marsh that Connolly had a "crush" on her, Connolly's comments made her "feel very uncomfortable." (*Id.* at 267.) Plaintiff avers that she complained on each occasion to Connolly, Marsh and Wade. (Pl.'s Aff. ¶ 17.)

According to Defendants, Connolly worked out of Tri-Wire's main office in Massachusetts during the entire course of Plaintiff's employment. (Paris Aff. ¶ 7.) Therefore,

26

Plaintiff did not have any regular or direct contact with Connolly. (*Id.*) Plaintiff testified, however, that at some point before Paris was hired, Connolly was one of her supervisors. (Pl.'s Dep. at 72, 170-71.)

**3.** ***Plaintiff has Raised a Genuine Issue of Material Fact as to her Hostile Work Environment Claims***

In seeking summary judgment, Defendants' sole argument is that even if the allegations of Spiers's and Connolly's conduct are true, they do not rise to the level of an actionable hostile work environment, viz. they were not sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment.[13] The Court finds that, although it is a close call, Plaintiff has submitted sufficient evidence to create an issue of fact on this issue.

"On a motion for summary judgment, the question for the court is whether a reasonable factfinder could conclude, considering all the circumstances, that the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Schiano*, 445 F.3d at 600 (citation and internal quotation marks omitted). Assuming arguendo that none of Spiers's or Connolly's acts or comments was sufficiently egregious on its own, when taken together they do describe a work environment in which a jury could find an ongoing pattern of sexually offensive and humiliating conduct. A jury could find that Spiers's and Connolly's sexually offensive remarks, directed at Plaintiff as well at at least one other female employee, together with Spiers's unwanted physical touches and Plaintiff's pleas for him to stop, cast women in a demeaning role and negatively impacted Plaintiff's

---

[13] Defendants do not discuss the second element of a hostile work environment claim, i.e., whether the allegedly harassing conduct can be fairly imputed to Tri-Wire. Accordingly, the Court declines to address it.

working environment. Although Defendants place great reliance on an excerpt from Plaintiff's deposition testimony wherein Plaintiff admitted that "the only time" she ever felt uncomfortable going to work was "[a]t the end" when she "was threatened by" Martin, (Polito Dep. at 339), Plaintiff later explained that what she meant was that although she "always felt uncomfortable" with "the things that were said" (*id.* at 340), she was not uncomfortable showing up to work because she knew she had to support her child (*id.* at 338-39). Although the Court is underwhelmed with the lack of specificity with regard to some of Plaintiff's allegations,[14] viewing the record as a whole in the light most favorable to Plaintiff, the Court concludes that Plaintiff has proffered sufficient evidence upon which a reasonable juror could find that Plaintiff was subjected to a workplace permeated with discriminatory harassment which was sufficiently severe or pervasive as to alter the conditions of her work environment. Accordingly, Defendants' motion for summary judgment on Plaintiff's state-based hostile work environment claims is denied.

**B.** *Plaintiff's Claims Under the NYCHRL*

Plaintiff also asserts a claim based upon hostile work environment under the NYCHRL. Defendants do not separately address this claim and do not cite any relevant authority under the NYCHRL. Plaintiff, on the other hand, asserts that "New York State courts have recognized that the 'New York City Human Rights Law was intended to be more protective than the state and federal counterpart.' " *Semanovic v. NYSE Group, Inc.*, 2007 WL 4563431, at

---

[14] For example, Plaintiff claims that Spiers and Connolly made "jokes and offensive comments" during the viewing of the sexual harassment training video. (Pl.'s Aff. ¶ 15.) Plaintiff does not indicate, however, whether these jokes were of a sexual nature directed towards women or merely criticism of the video itself.

*4 (S.D.N.Y. Dec. 21, 2007) (quoting *Farrugia v. North Shore Univ. Hosp.*, 820 N.Y.S.2d 718 (Sup. Ct. N.Y County 2006)). Given Defendants' failure to proffer any argument or authority on Plaintiff's NYCHRL claim together with the Second Circuit's admonition that claims brought under the NYCHRL be evaluated separately from those brought under the NYSHRL, *see Kolenovic v. ABM Indus. Inc.*, 2010 WL 227660, at *1 (2d Cir. Jan. 21, 2010) (unpublished), Defendants' motion for summary judgment on this claim is denied.

**V.**     ***Defendants' Alleged Negligent Retention and Supervision***

Count Ten alleges that Tri-Wire negligently retained and supervised Spiers and Connolly because Tri-Wire "knew or should have known of the behavior of Defendants Spiers and Connolly and their propensity toward the harassing conduct based on their history of abusive and harassing conduct." (Compl. ¶ 100.) Defendants move for summary judgment arguing that Plaintiff has failed to present any evidence imputing knowledge of propensity to Tri-Wire.

In support of her claim, Plaintiff asserts that both Spiers and Connolly were named as aiders and abettors in a previous sexual harassment claim brought by Boyjian and that she was asked to testify on Tri-Wire's behalf. (*See, e.g.*, Pl.'s Dep. at 57-68, 438-43.) In response, Defendants claim in their Reply Brief that "[t]he instant action is the first formal action commenced against Tri-Wire and any of its employees for the causes of action asserted against defendants by plaintiff." (Defs.' Reply at 5.) However, Marsh conceded in his deposition that Boyjian filed some sort of discrimination charge against Tri-Wire although he could not recall "how it was presented." (Marsh Dep. at 48.) As far as he knows, the case settled. (*Id.*)

Although the record is sparse, the evidence that exists supports Plaintiff's claim that Boyjian filed some sort of harassment claim against Spiers and Connolly prior to their

alleged harassment of Plaintiff, thereby putting Tri-Wire on notice of their alleged illegal conduct.  Accordingly, based on the arguments and evidence presented, the Court declines to grant Defendants summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED in part and GRANTED in part.  Defendants' motion is GRANTED with regard to Plaintiff's First Cause of Action alleging a COBRA violation.  Otherwise, Defendants' motion is DENIED.

**SO ORDERED.**

Dated: Central Islip, N.Y.
        March 19, 2010

                                        /s
                                        Denis R. Hurley,
                                        United States District Judge